UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FORT PIERCE DIVISION

Case No. 2:16-cv-14001

_____
)
**REY DAVID AGUILAR-ZAVALA,**                            )
**LUIS ALFREDO CANSECO-PENSINA,**                        )
**JUAN CARLOS CARABEO-LOPEZ,**                           )
**ELIUD COMPEAN-HERNANDEZ,**                             )
**JOSE HILARIO CORONA-CAMARGO,**                         )
**JOSE LUIS FERNANDEZ-AGUILAR,**                         )
**OMAR ALEJANDRO FERNANDEZ-AGUILAR,**                    )
**JOSE ELIAZAR GUEVARA-RAMIREZ,**                        )
**DANIEL HERNANDEZ-JUAREZ,**                             )
**JESUS HERNANDEZ-JUAREZ,**                              )
**EFRAIN HERRERA-CASTILLO,**                             )
**GILBERTO JARAMILLO-GUEVARA,**                          )
**HERMINIO MARCELINO LOPEZ-LOPEZ,**                      )
**RUFINO JUAN LOPEZ-LOPEZ,**                             )
**CENOBIO ELEUTERIO LOPEZ-SILVA,**                       )
**OLIVERO MANUEL LUIS-JIMENEZ,**                         )
**NOE GUSTAVO LUNA-PARRAS,**                             )
**REYES MARTINEZ-CRUZ,**                                 )
**RODOLFO MOLINA-HERNANDEZ,**                            )
**ARMANDO ORTEGA-RODRIGUEZ,**                            )
**JESUS ORLANDO OSTIGUIN-TORRES,**                       )
**ERICK FERNANDO RAMIREZ-BARTOLO,**                      )
**JUAN MARTIN RIVERA-GARCIA,**                           )
**LUIS ALBERTO SANTIAGO-CASTAN,**                        )
**JUAN SILVA-DOMINGUEZ and**                             )
**JAIME ALBERTO VERDINES-GONZALEZ,**                     )
                                                         )
               **Plaintiffs,**                           )
                                                         )
**v.**                                                   )
                                                         )
**RIVERBELL, INC. and**                                  )
**HARMON FRUIT CONTRACTING, INC.,**                      )
                                                         )

Defendants.                                    )
_____        )

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF,
COSTS OF LITIGATION AND ATTORNEY'S FEE**

**PRELIMINARY STATEMENT**

1.      This is an action by 26 migrant farmworkers employed by Defendants Riverbell,

Inc. ("Riverbell") and Harmon Fruit Contracting, Inc. ("Harmon Fruit") to hand-pick citrus fruit in

Florida during the 2013-14 harvest season.   The Plaintiffs bring this action to secure and vindicate

rights afforded them by the federal regulations governing the temporary foreign agricultural

worker program, 20 C.F.R. §§655.100, *et seq*., the Fair Labor Standards Act, 29 U.S.C. §§201, *et*

*seq.* ("FLSA"), and common law.

2.      The Plaintiffs claim that, in contravention of federal regulations and the workers'

employment contracts, Defendants Riverbell, Inc. and Harmon Fruit Contracting, Inc. failed to pay

the Plaintiffs the applicable adverse effect wage rate for their labor picking oranges during the

2013-14 harvest season.   In addition, the Plaintiffs contend that Defendants Riverbell, Inc. and

Harmon Fruit Contracting, Inc. failed to pay minimum wages as required by the Fair Labor

Standards Act, 29 U.S.C. §206(a).

3.      Riverbell, Inc. and Harmon Fruit Contracting, Inc. jointly employed the Plaintiffs,

who were agricultural "guest workers" recruited from Mexico pursuant to the temporary

agricultural work visa program, commonly known as the "H-2A program."   8 U.S.C.

§1188(H)(ii)(a).   These guest workers ("H-2A workers") had written contracts of employment

with Riverbell, Inc. that included specific representations regarding wages, hours and working

- 2 -

conditions.   The terms of these employment contracts were dictated primarily by federal regulations.     .

4.      Throughout the period while the Plaintiffs were jointly employed by Riverbell and Harmon Fruit Contracting, Inc. during the 2013-14 Florida citrus harvest, the Defendants breached the terms of the Plaintiffs' employment agreements.   The Defendants consistently failed to pay the promised wage for all hours worked.   The Defendants also failed to reimburse the Plaintiffs for costs they incurred primarily for the benefit of the Defendants to the extent that these costs reduced these Plaintiffs' earnings for their first week of work below the required hourly rate.

5.      The Plaintiffs seek to recover their unpaid wages, actual, statutory, liquidated, consequential and compensatory damages and pre- and post-judgment interest.   The Plaintiffs also seek a reasonable attorney's fee pursuant to 29 U.S.C. §216(b) and §448.08, Fla. Stat.

## JURISDICTION

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, this action arising under the laws of the United States and presenting state law claims that implicate significant federal issues; by 29 U.S.C. §216(b), this action arising under the Fair Labor Standards Act. LSA; by 29 U.S.C. §1854(a), this action arising under the AWPA; and by 28 U.S.C. §1367, providing supplemental jurisdiction over the Plaintiffs' common law claims.

7.      This Court has supplemental jurisdiction over the claims arising under state law because these claims are so related to the federal claims that they form part of the same case or controversy.

8.      Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

- 3 -

## VENUE

9.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c) and 29

U.S.C. §1854.


## PARTIES

10.      The Plaintiffs are citizens of Mexico who were admitted to the United States on a

temporary basis pursuant to 8 U.S.C. §1101(a)(15)(H)(ii)(a) to work for the Defendants during the

2013-14 Florida citrus harvest.

11.      At all times relevant to this action, the Plaintiffs were employed in the production

of goods for interstate commerce, within the meaning of the FLSA.

12.      Defendant Riverbell, Inc. is a closely-held Florida corporation that maintains its

headquarters in Fort Pierce, St. Lucie County, Florida.   On information and belief, Riverbell, Inc.

is a wholly-owned subsidiary of Defendant Harmon Fruit Contracting, Inc. and all of Riverbell's

significant corporate actions are directed or controlled by Harmon Fruit.   At all times relevant to

this action, Defendant Riverbell, Inc. was an employer of the Plaintiffs within the meaning of the

FLSA, 29 U.S.C. §203(d).   At all times relevant to this action, Defendant Riverbell, Inc. was an

employer or joint employer of the Plaintiffs within the meaning of 20 C.F.R. §655.103(b) in that it

had a physical location used as a place of business in Fort Pierce, Florida, had the ability to hire,

supervise or otherwise control the work of the Plaintiffs and other H-2A workers, and possessed a

valid Federal Employer Identification Number.

13.      Defendant Harmon Fruit Contracting, Inc. is a closely-held Florida corporation that

maintains its headquarters in Fort Pierce, St. Lucie County, Florida.   On information and belief,

Harmon Fruit is the parent corporation of Defendant Riverbell and directs or controls all of Riverbell's significant corporate actions.   At all times relevant to this action, Defendant Harmon Fruit was an employer of the Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(d).   At all times relevant to this action, Defendant Harmon Fruit Contracting, Inc. was an employer or joint employer of the Plaintiffs within the meaning of 20 C.F.R. §655.103(b) in that it had a physical location used as a place of business in Fort Pierce, Florida, had the ability to hire, supervise or otherwise control the work of the Plaintiffs and other H-2A workers, and possessed a valid Federal Employer Identification Number.

## STATEMENT OF FACTS

14.     An agricultural employer in the United States may import aliens to perform labor of a temporary nature if the U.S. Department of Labor certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers.   8 U.S.C. §§1101(a)(15)(H)(ii)(a) and 1188 (a)(1).   Aliens admitted in this fashion are commonly referred to as "H-2A workers."

15.     Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly-situated U.S. workers. 20 C.F. R. § 655.122.   Among these terms are the following:

- 5 -

(a)     The employer will pay all workers performing the activities described in the petition at least the applicable adverse effect wage rate for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.122(l);

(b)     The employer will abide by the requirements of 20 C.F.R. § 653.501, including the requirements of 20 C.F.R. § 653.501(d)(4), mandating compliance with state and federal minimum wage laws;

(c)     For those employees completing 50 percent of the work contract period, the employer will pay the worker for reasonable costs incurred by the worker for inbound transportation and daily subsistence en route; For those employees completing the work contract period, the employer will provide or pay for the worker's transportation and subsistence from the place of employment to the place from which the worker departed to work for the employer, in most instances, the worker's home town;

(d)     The employer will keep accurate and adequate records with respect to the workers' earnings and all deductions from wages and the reasons therefor.   20 C.F.R. §655.122(j); and

(e)     The employer will furnish to the worker each payday an hours and earnings statement showing the hours offered, the hours actually worked and the piece-work units earned each day.   20 C.F.R. §655.122(k).

16.     The work contract must contain, at a minimum, the terms mandated by the federal regulations governing the employment of H-2A workers.   In the absence of separate, written work contract, the clearance order serves as the contract between the H-2A worker and his employer. 20 C.F.R. §655/122(q).

17.     Prior to the commencement of the 2013-14 Florida citrus harvest, the Defendants contracted with various citrus growers in the area to hand-harvest the growers' citrus crops

- 6 -

18.      Because of an anticipated of available workers in the area of their operations, in late October, 2013, Defendant Riverbell, Inc. applied for temporary certification to employ temporary foreign workers to help them meet their labor needs for the upcoming 2007-08 citrus harvest.    The application sought admission of 126 H-2A guest workers from Mexico for employment from November 4, 2013 through May 31, 2014.

19.      The United States Department of Labor accepted Riverbell's temporary labor certification application for 126 citrus harvest workers.   This temporary labor certification application included a clearance order containing or incorporating by reference, *inter alia*, the terms described in Paragraph 15.

20.      The United States Department of Labor ultimately approved Riverbell's temporary labor certification for 126 citrus harvest workers for citrus-harvesting employment between November 4, 2013 and May 31, 2015.

21.      The Plaintiffs were among the individuals recruited in Mexico by the Defendants and their agents to fill the positions described in Riverbell's clearance order.

22.      Following their recruitment, in early January, 2014, the Plaintiffs traveled at their own expense from their respective hometowns Monterrey, Mexico to apply for H-2A visas at the United States Consulate in that city. Each of the Plaintiffs was required to pay a visa application fee in the amount of approximately $190.00.   The Plaintiffs also incurred lodging expenses while they remained in Monterrey, waiting for their H-2A visa applications to be processed. After receiving their H-2A visas in early January, 2014, the Plaintiffs traveled to St. Lucie County, Florida.   At the U.S./Mexico border, the Plaintiffs each paid U.S. immigration officials a fee of $6.00 for the issuance of Form I-94 as a prerequisite of entering the U.S.

23.     The Plaintiffs incurred transportation and subsistence expenses in traveling from their homes to Monterrey, Mexico and from Monterrey, Mexico to Defendants' jobsite in Florida.

24.     The expenses incurred in preparation for working with Defendants by the Plaintiffs as described in Paragraphs 22 and 23 were primarily for Defendants' benefit.   The Plaintiffs were not reimbursed in full for these expenses during their first week of their employment with Defendants.     While a portion of these expenses were reimbursed, the Plaintiffs were never reimbursed for the full amount of these pre-employment expenses or for their subsistence en route while traveling to the Defendants' jobsite.   By failing to provide for or pay the full cost of the inbound transportation and daily subsistence *en route* for the Plaintiffs, all of whom completed the first 50 percent of the work contract period, the Defendants breached the workers' employment contracts, as embodied in the Riverbell clearance order, and violated federal regulations at 20 C.F.R. §655.122(h)(1).

25.     As a result of the failure of Defendants to reimburse the Plaintiffs in full during their initial workweek of employment for the pre-employment expenses described in Paragraphs 22 and 23, the Plaintiffs' wages for these workweeks were less than the applicable federal and Florida minimum wages.

26.     As a result of the failure of Defendants to reimburse the Plaintiffs in full during their initial workweek for the pre-employment expenses described in Paragraphs 22 and 23, the Plaintiffs' for these workweeks were less than the applicable adverse effect wage rate.

27.     The Plaintiffs worked harvesting citrus for the Defendants from early January through the end of May, 2014.   The Plaintiffs were compensated for their labor picking citrus on a piece-rate basis, based on the number of 10-box tubs harvested.

- 8 -

28.     The Plaintiffs' initial assignments involved harvesting early- and mid-season oranges.   Some of these early- and mid-season oranges were harvested for fresh-market sale and could only be harvested when dry, because excessive moisture rendered the oranges unusable for fresh market sale.    On days when their crew was harvesting fruit for fresh market sale, the Plaintiffs routinely were forced to wait at the beginning of the day at the jobsite for periods of an hour or more each day before being allowed to begin picking.   This waiting time occurred at the direction of the Defendants and their customers, who wanted to make certain that any dew or other moisture on the fruit had evaporated before harvesting began.

29.     On their payroll records and on the wage statements issued to the Plaintiffs, the Defendants failed to include as time worked the periods the Plaintiffs were present at the worksite and, at the Defendants' direction, waiting for the dew to dry on the citrus fruit being harvested for fresh market sale, as described in Paragraph 28.

30.     The Defendants failed to pay the Plaintiffs wages at least equal to the AEWR for their work during the 2013-14 citrus harvest.

31.     The Defendants' failure to pay the AEWR as described in Paragraph 32 resulted in part from their failure to credit the Plaintiffs with all hours worked.   Besides failing to credit the Plaintiffs with their waiting time as described in Paragraph 28, the Defendants under-reported the hours worked by the Plaintiffs in order to minimize the amount of supplemental pay need to boost each workers' workweek wages to the adverse effect   wage rate.

32.     The Defendants failed to keep accurate and adequate records as required by 20 C.F.R. §655.122(j) with respect to the work of the Plaintiffs.   Among other things, the Defendants did not accurately record with regard to each worker the number of compensable hours actually worked each day and the time work began and ended each day.

- 9 -

33.     The Defendants failed to furnish to the Plaintiffs hours and earnings statements meeting the requirements of the federal regulations governing the H-2A program, 20 C.F.R. §655.122(k).   Among other things, the hours and earnings statements the Defendants furnished to the Plaintiffs did not accurately reflect the hours actually worked or the number of hours offered during the workweek.

34.     The Defendants failed to provide or pay for the full cost of the outbound transportation and daily subsistence *en route* for those Plaintiffs who completed the work contract period, and thereby breached the workers' employment contracts, as embodied in the Riverbell clearance order, and violated federal regulations at 20 C.F.R. §655.122(h)(2).

## CLAIMS FOR RELIEF

### COUNT I: BREACH OF EMPLOYMENT CONTRACT

35.     This count sets forth a claim by the Plaintiffs against the Defendants for their breach of their employment agreement with the Plaintiffs, as embodied in the clearance order submitted in conjunction with the temporary labor certification application filed by Riverbell. Each of these breaches represented a violation of the federal regulations governing the H-2A program, as incorporated in Riverbell's clearance order.

36.      The Defendants offered and the Plaintiffs accepted employment on specific terms and conditions, including those set out in Paragraph 15.   These terms and conditions were included in the clearance order filed by Riverbell, which served as the employment contract between the Plaintiffs and the Defendants in accordance with 20 C.F.R. §655.122(q).   These terms were dictated in substantial part by the federal regulations governing the H-2A program.

37.     The Defendants breached their employment contracts with the Plaintiffs by providing terms and conditions of employment that were materially different from those described in the clearance order submitted on behalf of Riverbell, Inc., including the following:

a.      The Plaintiffs were not paid at least the applicable adverse effect wage rate for their labor;

b.      The Plaintiffs were not paid the Florida minimum wage for each hour they were employed;

c.      The Defendants did not provide inbound transportation and subsistence expenses as required by federal regulations;

d.      The Defendants failed to maintain payroll records accurately recording the hours

worked by the Plaintiffs; and

      e.     The wage statements furnished to the Plaintiffs each pay period did not accurately show the hours actually worked and omitted data as to the number of hours offered.

      38.     As a direct consequence of the Defendants' breaches of their employment contracts as set out in this count, the Plaintiffs have suffered economic injury.

## COUNT II: FAIR LABOR STANDARDS ACT

39.    This count sets forth a claim for declaratory relief and damages by the Plaintiffs for the Defendants' violations of the minimum wage provisions of the FLSA during the 2013-14 Florida citrus harvest.

40.    The Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay each of the Plaintiffs at least $7.25 for every compensable hour of labor he performed during each workweek in the 2013-14 Florida citrus harvest.

41.    The violations of the FLSA as set out in Paragraph 40 resulted in part from the Defendants' failure to supplement the Plaintiffs' piece-rate earnings so as to raise their individual pay period wages to a rate equal to or exceeding the minimum wage and failure to credit the Plaintiffs with all compensable hours worked.

42.    The violations of the FLSA as set out in Paragraph 40 resulted in part from the Defendants' failure to fully reimburse the Plaintiffs during their first week of employment for expenses incurred and   facilities primarily benefitting the Defendants, including visa processing fees, visa-related expenses, lodging expenses in Monterrey, fees for issuance of Form I-94, and the full cost of travel from the workers' homes to the site of the Defendants' operations.

43.    As a consequence of the Defendants' violations of the FLSA as set out in this count, the Plaintiffs are entitled to recover their unpaid minimum wages, plus an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that this Court enter an order:

a.       Declaring that the Defendants violated breached their employment contracts with the Plaintiffs as set forth in Count I;

b.       Declaring that the Defendants violated   the FLSA, as set forth in Count II;

c.       Granting judgment in favor of the Plaintiffs and against the Defendants, jointly and severally, on the contract claims set forth in Count I and awarding each of the Plaintiffs his actual and compensatory damages;

d.        Granting judgment in favor the Plaintiffs and against the Defendants, jointly and severally, on the Plaintiffs' FLSA claims as set forth in Count II, and awarding each of them the amount of his unpaid minimum wages and an equal amount as liquidated damages;

e.       Enjoining the Defendants from further failure to comply with the regulations governing the H-2A program;

f.       Awarding the Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C. §216 and §448.08, Fla. Stat.;

g.       Awarding the Plaintiffs the costs of this action; and

h.       Granting such further relief as this Court deems just and appropriate.

- 14 -

Respectfully submitted,


**/s/ Gregory S. Schell**
Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
Florida Legal Services, Inc.
508 Lucerne Avenue
Lake Worth, Florida      33460-3819
Telephone:     (561) 582-3921
Facsimile:     (561) 582-4884
e-mail:        Greg@Floridalegal.Org


Attorney for Plaintiffs